UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ALLEN CASTRO, Ph.D** | § | |
| *Plaintiff,* | § | |
| | § | |
| *V* | § | **CIVIL ACTION NO. _____** |
| | § | |
| **BEXAR COUNTY, TEXAS,** | § | |
| *DEFENDANT.* | § | **JURY TRIAL DEMANDED** |

### PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT**

**NOW COMES** DR. ALLEN CASTRO, Ph.D. ("hereinafter called "PLAINTIFF"), complaining of and about BEXAR COUNTY, TEXAS (hereinafter called "DEFENDANT BEXAR COUNTY"), and would respectfully show unto the Court the following:

### I.    SUMMARY/STATEMENT OF THE CASE

2.    On or about July 9, 2020 Plaintiff, ALLEN CASTRO submitted a charge of Discrimination and Retaliation Discrimination to both the Texas Workforce Commission Civil Rights Division (hereinafter, "TWCCRD") and the U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC") against BEXAR COUNTY for discrimination and Retaliation Discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); under Chapter 21 of the Texas Labor Code; under the Age Discrimination in Employment Act ("ADEA"); the Americans with Disabilities Act of 1990 ("ADA"); the Americans with Disabilities Act Amendment Act of 2008, ("ADAAA"). Plaintiff will show that DEFENDANT, BEXAR COUNTY, is guilty of discriminatory practices and Retaliation Discrimination in violation of not only Chapter 21 of the Texas Labor Code but also in violation of Title VII, the ADEA, the ADA, and the ADAAA, and further, in violation of the employment rules, policies, procedures, and employment guidelines promulgated by the BEXAR COUNTY.



## II.     PARTIES

3.     Plaintiff, DR. ALLEN CASTRO, is an individual, that is citizen of the State of Texas.

4.     DEFENDANT, BEXAR COUNTY - Government of BEXAR COUNTY, Texas, a political subdivision of the State of Texas, which may be served with process by serving the County Judge, The Honorable Nelson Wolfe, at 100 Dolorosa, San Antonio, TX 78205, under the authority of Texas Civil Practice & Remedies Code section 17.024(a).

## III.     JURISDICTION AND VENUE

5.     The Court has subject matter jurisdiction under 28 U.S.C. Plain 1331 because this civil action arises under the Constitution, laws, or treaties of the United States; specifically, Title VI of the Civil Rights Act of 1964.

6.     Venue is proper in the Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. § 1391(b), or concurrent jurisdiction with Bexar County District Court because a substantial part of the events or omissions giving rise to the claims herein occurred in this District and Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practice was committed in this state.

7.     On or about August 29, 2022, and within 180 days after Defendant's discriminatory acts Dr. Allen Castro timely filed an Amended Charge of Discrimination against Defendant with the appropriate administrative agencies, including the United States Equal Employment Opportunity Commission (hereinafter "EEOC") identified as charge number 451-2022-03463.

8.     On or about October 5, 2022, Dr. Allen Castro received Dismissal and Notice of Rights which his right to File a Civil Action (hereinafter "Notice") from the EEOC.

9.     By filing a Charge of Discrimination, receiving his Notice, and filing suit within ninety (90) days of receiving his Notice, Plaintiff, Dr. Allen Castro has complied with all



conditions precedent and exhausted all applicable administrative remedies required by the Federal Law and the Texas Labor Code prior to filing suit.

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.1    Plaintiff timely filed a charge of discrimination against defendant with the United States Equal Employment Opportunity Commission (EEOC) and equivalent state agencies alleging, age. Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC. A copy of the notice of the right to sue is attached and incorporated herein by reference as "Exhibit No. 1".

## V.    FACTS / FACTUAL ALLEGATIONS

**THE LEGAL THEORIES AND FACTUAL BASIS IN THIS MATTER WHICH ARE CONTAINED AND INCORPORATED IN THE EEOC FORMAL COMPLAINT AS IF ATTACHED HEREIN; TO INCLUDE BUT NOT LIMITED TO: CLAIMANT AND ALL PREVIOUS STATEMENTS, AFFIDAVITS AND DOCUMENTS PROVIDED IN EEOC CHARGE 451-2022-03463 BY OR THROUGH CLAIMANT OR RESPONDENT.**

**THE LEGAL THEORIES AND FACTUAL BASIS IN THIS MATTER WHICH ARE CONTAINED IN THE AFFIDAVIT OF DR. ALLEN CASTRO ATTACHED AND INCORPORATED HEREIN**

10.    The time frame for the alleged TWCCRD and EEOC charge(s) of Discrimination and Retaliation Discrimination are continuing in nature.   The pattern of behavior by DEFENDANT was from July 5, 2012 to the present day, as PLAINTIFF is still employed with the DEFENDANT as of the date of the filing of this Petition, and is still suffering the effects of the Harassment, Discrimination and Retaliation Discrimination.

11.    Significantly for purposes of this Petition, on July 5th, 2012, Mrs. Tina Smith-Dean ("SMITH-DEAN    ") was promoted to Assistant County Manager and Seth McCabe became



her direct report and PLAINTIFF's immediate supervisor. All three individuals were housed on the 9th floor of the Paul Elizondo Tower (PET) with offices in very close proximity to each other. This formal chain-of-command structure as well as office location existed until the first week of October, 2018 at which time PLAITNIFF accepted the newly created position of Substance Abuse Program Manager within the Department of Behavioral Health Services (DBHS). This Department was housed within the larger Office of Criminal Justice (OCJ) on the 3rd floor of the PET. This position was created by SMITH-DEAN      in response to an increasingly hostile relationship between PLAINTIFF and her direct report, Seth McCabe.

12.    On June 9, 2020, PLAINTIFF was apprised by the Director of OCJ that he no longer reported to the Director of DBHS effective immediately. This new reporting structure was framed in terms of aligning his principal job duties with his chain-of-command. The Director of DBHS framed the move as a promotion because PLAINTIFF now reported to the same person as the DBHS Director himself.

13.    Later that summer, the entire OCJ was notified that it would be moving to a suite of offices on the 9th floor of the PET. The one exception would be the DBHS of which PLAINTIFF was no longer a part. PLAINTIFF was notified that he would be the one single non-DBHS staff person of the OCJ who would remain on the 3rd floor. PLAINTIFF made his concerns known by email and verbally to both the Director of the OCJ and the Director of DBHS. His concerns centered on 1) the detrimental impact to the quality and quantity of his work; and, 2) the stigma associated with being the only OCJ staff person not moving. Leadership stated that because he was the most recent addition to the OCJ, there was no room for him in the suite of offices on the 9th floor. This rationale was actionably refuted within two months.

14.    PLAINTIFF alleges that the true purpose of not being moved to the 9th floor is Retaliation Discrimination by Mrs. Tina Smith-Dean      against him. This Retaliation Discrimination is intentional, willful, and knowingly malicious. It is also characteristic of a larger pattern of Retaliation Discrimination by Mrs. Tina Smith-Dean      that has been directed



not just at PLAINTIFF but at other current and former employees with EEOC cases pending against her.

15.    Specifically, PLAINTIFF has been referenced by name as a witness in the pending EEOC cases of Mrs. Nancy McClure Soto and Ms. Alex Millan.  He also participated in nearly four hours of testimony and provided comprehensive backup documentation in BEXAR COUNTY's internal investigation into the complaints that Mrs. Soto lodged against SMITH-DEAN      (the "Kelmar Global Investigation").   It was in this investigation that PLAINITIFF made the allegation of age discrimination against him – for the second time – and made allegations – for the first time – of potential sexual assault(s) in the workplace by Seth McCabe ("McCABE") against PLAINTIFF'S coworker(s) including one of the EEOC complainants.

16.    The BEXAR COUNTY Criminal District Attorney's Office (D.A.'s Office) concluded that no criminal malfeasance took place; however, PLAINTIFF would argue that the D.A.'s Office has a conflict of interest between its role as criminal prosecutor and its role as civil attorney for the County.  The D.A.'s Office – in collaboration with the County Manager's Office – has cultivated a "cover up culture" in which victims are silenced and those with corroborating information and similar experience are diminished, discounted, and discarded.  The conclusions reached by the D.A.'s Office and accepted by the County Manager's Office are self-serving and short-sighted.    In fact, participation in that investigation caused nothing but Retaliation Discrimination against those who came forward with EEOC and non-EEOC complaints.

17.    The pattern of Retaliation Discrimination speaks for itself.  PLAINTIFF is not being moved with his colleagues to the 9th floor for the same reason Ms. Millan has been moved away from the 9th floor and for the same reason why Mrs. McClure Soto was escorted from the 9th floor and ultimately discharged from the County.  Their behavior is protected by Federal law but not protected by the Assistant County Manager.  As a consequence, PLAINTIFF – like Ms. Millan and Mrs. Soto – is being ostracized, marginalized, and stigmatized.



18.    It is also worth noting that despite being told that there was no room on the 9th floor for PLAINTIFF, a younger Office Assistant in OCJ was promoted in October 2020 to OCJ Coordinator and moved from a cubicle into an empty office that had been empty since the entire OCJ moved.  PLAINTIFF has also observed the consistent messaging from his coworkers that he is not to be seen on the 9th floor.  Quotes such as PLAINTIFF was "sighted" and PLAINTIFF "was not supposed to be up there" are difficult to reconcile with the fact that his immediate supervisor, coworkers, and colleagues are all "up there."

19.    It should be noted that while PLAINTIFF made the original allegation of age discrimination against McCABE and that his immediate supervisor, Mrs. Tina Smith-Dean    , attempted to rectify the situation; PLAINTIFF never benefited from the solution proposed by SMITH-DEAN    (a "team building" exercise).  In fact, he was the one single person who did not benefit from a team building exercise even though it was his allegation that prompted the restorative intervention for the other older employees in the first place.

20.    It should also be noted that PLAINTIFF was made aware this past summer of some photos of a mandatory 9th floor holiday party at the Cadillac Bar in which his co-workers and immediate supervisor(s) at the time (McCABE and Mrs. Tina Smith-Dean    ) were engaged in "gay bashing" behaviors; interacting with blow up sex dolls; and, posing with "willie warmers" and "midget condoms."  As a member of the LGBTQ community and as someone with thirteen years of sobriety (November 21, 2006); PLAINTIFF did not and would not have attended an office function of that nature.  This incident suggests that if this kind of behavior is going on behind PLAINTIFF'S back; then Retaliation Discrimination may not be the only motive for the behavior of Mrs. Tina Smith-Dean    and that her targeting of PLAINTIFF is and always has been a function of animus related to an EEOC protected status long before he ever assisted Mrs. Soto and Mrs. Millan.

21.    SMITH-DEAN    remains in her position as Assistant County Manager and has the authority over the Human Resources Department, the Budget Office, grants, and management and finance.  She also has the authority and has used her influence over PLAINTIFF'S current



immediate supervisor to make his work situation untenable. The reasons offered for not moving PLAINTIFF with his colleagues and coworkers on the 9th floor are not credible.

22.    PLAINTIFF believes that SMITH-DEAN    is retaliating against him based on his participation in a protected activity in violation of Title VII of the Civil Rights Act of 1967, as amended. Moreover, PLAINTIFF believes that he is being discriminated against based on several protected classes: age, sex, and disability.

23.    Plaintiff, ALLEN CASTRO, Ph.D. is an employee within the meaning of Title VII and under the ADA, and belongs to a class protected under the statute, namely an employee subject to the civil service laws of a state government, governmental agency, or political subdivision. Plaintiff's job title is Substance Abuse Program Manager under the Department of Behavioral Health within the Office of Criminal Justice Department of DEFENDANT, BEXAR COUNTY.

24.    Due to continuous harassment and retaliatory attacks By Ms. Tina Smith-Dean    and others, PLAINTIFF worked in a hostile work environment that created stress, anxiety, and distractions.

25.    The best predictor of future behavior is past behavior- and vice versa. In PLAINTIFF'S allegations, Ms. Smith-Dean    admits in the position statement - and on D.A. letterhead -that she will engage in future Discrimination and Retaliation Discrimination against PLAINTIFF. She admits that she would object to PLAINTIFF being on the 9th floor with PLAINTIFF'S co-workers in the future. This is consistent with the Discrimination, and Retaliation Discrimination PLAINTIFF has already experienced.

26.    After PLAINTIFF made the protected commentary to the Kelmar Global investigation in 2020, his supervisor continued her retaliatory actions against PLAINTIFF.

27.    Plaintiff was discriminated and retaliated against for making procedural observations, and participating in a protected internal investigation against his supervisor, in violation of Title VII of the Civil Rights Act of 1990, as amended. Plaintiff also believes he was discriminated and



retaliated against due to his sexual orientation and age, also in violation of the Civil Rights Act of 1990, as Amended.

28.     PLAINTIFF has worked for DEFENDANT for 17 years and believes that he has been isolated and retaliated against based on his participation in a protected activity in violation of Title VII of the Civil Rights Act of 1967, and Americans with Disabilities Act of 1990, as amended as stated herein.

29.     Dr. Castro continues to be retaliated against because he was a witness and participant in two EEOC investigations made by coworkers, Mrs. Soto and Ms. Millan On Friday, July 15, 2022, the Business Services Manager for the Department stated that Mr. McCabe was no longer employed at the County (email dated Friday July 22, 2022; 4:15pm). This was the individual who received an office in the Department's suite of offices on the ninth floor. By Monday, August 8, 2022, Dr. Castro had already noticed that the Peer Mediation Coordinator, had taken his office. Dr. Castro was not offered an office with his coworkers and am isolated in a totally different building two blocks away from the Department. Again, an individual who is younger, less educated, less tenured, and with a lower pay grade took a vacated office. This is now a pattern consistent with the marginalization and ostracism that I have experienced as a direct result to a subsequent Federal lawsuit.

## VI.  FACTS / FACTUAL ALLEGATIONS

**THE LEGAL THEORIES AND FACTUAL BASIS IN THIS MATTER WHICH ARE CONTAINED AND INCORPORATED IN THE EEOC FORMAL COMPLAINT AS IF ATTACHED HEREIN; TO INCLUDE BUT NOT LIMITED TO: CLAIMANT AND ALL PREVIOUS STATEMENTS, AFFIDAVITS AND DOCUMENTS PROVIDED IN EEOC CHARGE 451-2022-03463 BY OR THROUGH CLAIMANT OR RESPONDENT.**

**THE LEGAL THEORIES AND FACTUAL BASIS IN THIS MATTER WHICH ARE CONTAINED IN THE AFFIDAVIT OF DR. ALLEN CASTRO ATTACHED AND INCORPORATED HEREIN**



## FACTUAL BACKGROUND FOR RACE/NATIONAL ORIGIN DISCRIMINATION AND RETALIATION DISCRIMINATION

30.     It was widely understood that the Assistant County Manager, SMITH-DEAN     , was hostile towards ethnic minorities.  For example, she would be very displeased when Spanish was spoken in the workplace especially by individuals who were "beneath" her (i.e. janitorial staff).

31.     There was also an instance in which PLAINTIFF was writing a Federal body camera grant for the BEXAR COUNTY Sheriff's Office (BCSO).   This was during the time of Ferguson, Missouri and other instances where body cameras on law enforcement were becoming a priority.  PLAINTIFF wrote the grant from the worldview of a disenfranchised ethnic minority because PLAINTIFF had an affinity with that point of view and PLAINTIFF believed that this perspective would sell the grant.  McCabe, PLAINTIFF'S immediate supervisor at the time and Smith-Dean's direct report, "whitened up" the grant proposal and basically disempowered it. PLAINTIFF'S  co-worker at the time, Ms. Audrey Cavazos, remembers this situation quite well and will testify on PLAINTIFF'S  behalf.

32.     In December 2016, Mr. Smith directed a memo at staff in which his Chief of Staff was portrayed in dark face within a Spanish colonial context.  Although it was widely understood that Mr. Smith was mocking the Catholic community (another protected class), the memo has more complex nuances that cannot be understood by someone who treats the history of race and religion in the Americas with such blasé recklessness.

33.     The pattern of age Discrimination and Retaliation Discrimination is unmistakable.  In the summer of 2018, there was a "team building" exercise for the younger employees of the Budget and Finance staff.  None of the older staff members knew about the training with the exception of Mrs. Nancy McClure-Soto, the Administrative Services Coordinator for the Department.  She told the rest of us what was happening.  Later in the summer, PLAINTIFF confronted McCabe



about the humiliation involved with being the victim of age Discrimination and Retaliation Discrimination. Ms. Audrey Cavazos was a witness.

34.     Neither McCabe nor Smith-Dean     were able to get their stories straight on the motives for the initial team building. This incident of age Discrimination and Retaliation Discrimination is extensively documented and discussed in the Kelmar Global investigation that was conducted in response to Smith-Dean     's bullying of an older co-worker. PLAINTIFF'S interview with those investigators took place on January 14, 2020.

35.     Within the context of the EEOC charge that authorized PLAINTIFF'S right to sue, PLAINTIFF raise a second incident of age discrimination. Specifically, PLAINTIFF speaks to the issue of every single one of PLAINTIFF'S co-workers being moved to a new suite of offices with one exception: PLAINTIFF. The purported reason why PLAINTIFF was not moved with PLAINTIFF'S co-workers was because PLAINTIFF was a late addition to the Department and that there was no office space available for PLAINTIFF. Interestingly, there were two vacant offices at the time. Within two months of the move, one office was newly occupied by a young co-worker who had previously occupied a cubicle. The other office was "occupied" by a young, non-departmental individual who was consistently working from home at the time.

36.     The County later added additional justifications such as: 1) PLAINTIFF was not a part of "administration"; and, 2) PLAINTIFF was never promoted to a direct report status with the Department Director. This entire incident is profiled within PLAINTIFF'S EEOC rebuttal to the County's position statement. What is interesting is that beginning on Monday, April 12, 2021 and after PLAINTIFF'S rebuttal, the young non-departmental staff member started showing up to work every day and has been showing up ever since.

**Factual Background for Sex Discrimination and Retaliation Discrimination Claims**

37.     During the holiday season of 2015, a departmental office party was held at the Cadillac Bar across the street from the courthouse. The County email server was used to send invitations



out to staff.  PLAINTIFF has a copy of the email.  Because PLAINTIFF is in recovery himself, there was never a question that I would be absent from an office party for which a reasonable accommodation was not made (i.e. a non-bar location).  Consequently, it was not until years afterwards that PLAINTIFF saw what actually transpired at that party.

38.    PLAINTIFF has in PLAINTIFF'S custody pictures of heterosexual men and women co-workers mocking the LGBT community.  PLAINTIFF has seen pictures of men with blow up female sex dolls and women with crocheted "willie warmers" and "midget condoms."  What makes these photos so disheartening is that they memorialize the unguarded, heterosexist attitudes of PLAINTIFF'S co-workers with whom PLAINTIFF was expected to work.

39.    It should also be noted that at one time, there were two openly LGBT community members who worked in that Department.  Today, there are none.

### Factual Background of Disability Discrimination and Retaliation Discrimination

40.    Smith-Dean and the BEXAR COUNTY D.A.'s Office both in their signed position statement and signed affidavit refute PLAINTIFF'S  EEOC allegation by calling attention to a mental health crisis that PLAINTIFF experienced as a result of working in such a comprehensively bigoted environment.  It is true that PLAINTIFF experienced a mental health crisis which required that PLAINTIFF be hospitalized as a result of working within Smith-Dean's Department.  In fact, a case can be made such that PLAINTIFF'S reaction was actually a normal reaction to an abnormal environment created and sustained by Smith-Dean.

41.    The EEOC itself states that *"if you have depression, post-traumatic stress disorder (PTSD), or another mental health condition, you are protected against discrimination and harassment at work because of your condition, you have workplace privacy rights, and you may have a legal right to get reasonable accommodations that can help you perform and keep your job"* (OLC Control Number: EEOC-NVTA-2016-11).  The EEOC goes on to state that *"an*



*employer __cannot__ [emphasis EEOC's] rely on PLAINTIFF'S this or stereotypes about your*
*mental health condition when deciding whether you pose a safety risk."*

42.    What makes Smith-Dean and the D.A.'s Office allegations against me so shocking and discriminatory is that they use PLAINTIFF'S mental illness as an excuse to install bullet-proof glass in the workplace and to impede the public service that PLAINTIFF is expected to provide with PLAINTIFF'S colleagues.

43.    At no time has PLAINTIFF ever stated or ever intended to harm anyone else with a gun such that Smith-Dean would need to barricade herself behind bullet-proof glass.  Moreover, PLAINTIFF has never brought a gun to the workplace and PLAINTIFF does not even own a gun now.  Smith-Dean's concern for her safety and the safety of her staff is inconsistent with the facts.  If she had even a vague inkling of evidence to support her allegation, she and the D.A.'s Office would have put it in the position statement.

44.    Instead, the evidence is to the contrary.  First, if current immediate supervisor, Mr. Mike Lozito, and/or PLAINTIFF'S former immediate supervisor, Mr. Gilbert Gonzales, a licensed clinician, suspected that PLAINTIFF was a danger to others, then they would have acted. Second, if PLAINTIFF'S  own personal psychologist or psychiatrist thought that PLAINTIFF was a danger to others, then they would have acted.   Third, if the two Kelmar Global investigators thought that PLAINTIFF was a danger to others, then they would have acted.

45.    Fourth, Smith-Dean did not install bullet-proof glass on the 9th floor until after February 26, 2020 as evidenced in a photo of the Budget Office lobby in an investigative journalist's report.  If Smith-Dean felt as if PLAINTIFF were a danger to her and her staff, then she would have installed the bullet-proof glass with much more urgency.

46.    Fifth, there is one example after another of PLAINTIFF having incidental interactions with Smith-Dean      with no incident.  On February 23, 2021, for example, PLAINTIFF entered a "restricted access" elevator on the 3rd floor to speak with a co-worker on the 9th floor.



Commissioners Court had just ended.  Already inside the elevator were Smith-Dean    , the County Manager (Mr. David Smith) and his Chief of Staff (Mr. Thomas Guevara).  Smith-Dean and PLAINTIFF left the elevator on the 9th floor while the other two men continued on to their offices on the 10th floor.  If Smith-Dean    were that concerned about her safety, then she would have asked those men to accompany her to her office or she would have remained in the elevator with them.  She did nothing of the sort.  There are cameras all over the courthouse and the video will corroborate PLAINTIFF.  Courthouse video will also corroborate that this was not the first time that PLAINTIFF had been in the elevator with her or bumped into her in the hallways.

47.    Sixth, PLAINTIFF routinely interact with high profile elected officials such as the Honorable Nelson Wolff and his wife, Tracy; Commissioner Justin Rodriguez; Judge Peter Sakai; and the District Attorney himself.  On March 9, 2021, PLAINTIFF was in Commissioners Court because he was a part of two different presentations and agenda items.  Not only was PLAINTIFF the recipient of numerous accolades during those two presentations but if he were a threat to public safety, then Smith-Dean has chosen to "protect" herself with no regard for the wellbeing of others.

48.    Seventh, PLAINTIFF recommend that you listen to the audio tape recordings of the Kelmar Global investigation because if Smith-Dean is truly concerned about her safety, PLAINTIFF is not the person she needs to worry about, and the Kelmar Global investigators know that.  That person is on her side of the bullet-proof glass now.

49.    Eighth, if Smith-Dean were that concerned about the safety of her and her staff, then she would have done something long ago about the resident workplace bully and alleged sexual predator.    The number of individuals who approached her and her leadership about that individual is extensive and she did nothing.  Instead, she lauded him in an email which was ultimately quoted by at least one media outlet.  Her faux fear is not compelling.

50.    What Smith-Dean has done is morph suicidal ideation into homicidal intent that depends on a caricature of people with mental illness being violent against others.  It is the mentally ill



community's version of racial profiling and it is a violation of the guidance document issued by the EEOC.

51.    PLAINTIFF'S  right to privacy was also violated and was done so with the complicity of the D.A.'s Office.  Smith-Dean chose to have Ms. Diana Aguirre serve as the notary for her sworn statement.  Ms. Aguirre is the Retirement and Payroll Administrator for the entire County. She is a high profile County staff person and the only person with her position in the County. She is housed in the BEXAR COUNTY Auditor's Office – an office that is not answerable to the D.A.'s Office or the County Manager's Office.

52.    The signature page of the notarized affidavit that Smith-Dean submitted to the EEOC also contains the justification for the bulletproof glass.  Ms. Aguirre could not have missed it. The D.A.'s Office submitted this affidavit "as is" and references the affidavit on its cover letter with D.A. letterhead.    As the legal advocate and counselor for BEXAR COUNTY Commissioners Court, the D.A. is clearly comfortable with the contents of the affidavit itself and with the use of Ms. Aguirre as the notary.

53.    There is more.  In order for Smith-Dean to install bulletproof glass in her workplace, she would have had to direct the Budget Analyst and Budget Manager in charge of those funds to do so.  The Auditor's Office would have also had to consent to the expense and pay the invoice. The Facilities Department would have had to contract with a vendor to install it.  This cost – throughout the entire process – would have had to be justified and Smith-Dean justified it on paper with a federal agency.  She used PLAINTIFF as the excuse.

54.    Between Smith-Dean's choice of notary and the various checks and balances required to justify the bulletproof glass, the defamation of PLAINTIFF'S character is no longer contained. The D.A. owns its part in this fiasco.

55.    Mr. Smith has known for years what was going on in Smith-Dean's Department.  Ms. Audrey Cavazos, for example, wrote a scathing resignation letter outlining the mistreatment and



abuse of her and others. She went so far as to suggest that she contemplated suicide because of the mistreatment. She named me and others in her letter as a people of interest and yet Mr. Smith did not reach out to me or anyone to see if there was a problem. The employee turnover alone should have spoken for itself.

56.    Defendant is vicariously liable for defendant's employee's discriminatory conduct. Defendant did not exercise reasonable care to prevent and promptly correct the discriminatory conduct, even though plaintiff took advantage of defendant's measures designed to prevent and correct discriminatory conduct.

### FACTS OF DEFENDANT'S DISCRIMINATORY ACTIONS TAKEN AGAINST PLAINTIFF UNDER TITLE VII

**PLAINTIFF HAS ATTACHED HERETO THE AFFIDAVIT OF DR. ALLEN CASTRO[1] TO ESTABLISH FACTS THAT ARE NOT CONTAINED IN THE RECORD, WHICH ARE NOT APPARENT IN THE PLEADINGS; THE AFFIDAVIT IS ATTACHED HERETO AS EXHIBIT NO. 3, AND IS INCORPORATED BY REFERENCE THE SAME AS SET FORTH IN FULL.**

57.    Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely an employee subject to the civil service laws of a State government, governmental agency or political subdivision, and was fifty-four (54) years old, male, and of Hispanic descent.

58.    Defendant is an employer within the meaning of Title VII, is engaged in an industry affecting commerce, and has 15 or more employees for each working day in each of 20 or more

---

[1] See Exhibit No. 3, Statement of Dr. Allen Castro annexed hereto and incorporated by reference as if fully set forth herein.



calendar weeks in the current or preceding calendar year. The Defendant has more than five hundred employees.

59.    Mrs. Smith-Dean, Mr. Seth McCabe are plaintiff's supervisors are employed by the defendant as supervisors in the Bexar County Texas Government.

60.    Plaintiff's supervisors are empowered by defendant to take tangible employment actions against plaintiff. As senior supervisor's, the defendant's employees exercised supervisory authority over plaintiff, to include but not limited to 1) the authority to fire plaintiff, 2). the authority to reassign plaintiff to a position with significantly different responsibilities, 3) the authority to significantly alter plaintiff's benefits. Defendant's employees ultimately did those very things by denying the plaintiff advancement, reassigning him to lesser positions and creating a hostile work environment to cause the resignation or termination of plaintiff.

61.    Defendant intentionally discriminated against plaintiff because of his race, color, in violation of Title VII by Defendant, by taking away plaintiffs s duties, without any corrective or disciplinary written paperwork, and practicing acts discriminatory in nature intending to cause the plaintiff to be terminated or resign her position rather than continue to face additional harassment and discriminatory practices which leads plaintiff to claim that his rights were violated. Plaintiff's chain of command failed to abide not only defendant's own Policy Manual and Procedure, but also district wide guidelines.



62.     Defendant used the following discriminatory employment practices, policies, and rules in violation of Title VII:  Plaintiff's chain of command failed to abide not only defendant's own Human Resources Policy and Procedure but also dismissed other rules for hiring or employment actions. Although these practices, policies, and rules appear to be neutral, they serve to discriminate against a disproportionate number of persons of plaintiff's sex and age.

63.     Defendant and defendant's employees created a hostile work environment through its discriminatory words and actions towards plaintiff because of plaintiff's race and age. This conduct was so severe that it altered the terms and conditions of plaintiff's employment and interfered with plaintiff's work performance and thereby created an intimidating, hostile, and offensive work environment.

64.     Defendant is directly liable because it was negligent in discovering and remedying the discriminatory conduct. Defendant intentionally discriminated against plaintiff because of his race, and sex in violation of Title VII by Defendant, by taking away plaintiff's duties without any corrective or disciplinary written paperwork. Defendant was discriminatory in nature and intended to cause the plaintiff to resign or be terminated rather than continue to face additional harassment and discriminatory practices, to which plaintiff claims his civil service rights were violated.

65.     Defendant is strictly liable for defendant's employee's discriminatory conduct because defendant and defendant's employees took a tangible employment action against plaintiff that



significantly changed plaintiff's employment status. This ultimately led to plaintiff being reassigned with significantly different responsibilities and plaintiff's benefits were significantly changed ultimately desiring plaintiff to resign or be subject to termination which lead ultimately to wrongful termination.

66.    Defendant is vicariously liable for defendant's employee's discriminatory conduct. Defendant did not exercise reasonable care to prevent and promptly correct the discriminatory conduct, even though plaintiff took advantage of defendant's measures designed to prevent and correct discriminatory conduct.

A.    AGE DISCRIMINATION

67.    By and through this complaint and attached affidavit  Petitioner, Dr. Allen Castro pleads a *prima facie* case of age discrimination and contends: A prima facie case of age discrimination requires a plaintiff to demonstrate that he: 1) suffered an adverse employment action; 2) was qualified for the position; 3) was within the protected class when the adverse action occurred; and 4) was replaced by someone younger or outside the protected class, treated less favorably than a similarly situated younger employee, or otherwise discharged because of his age. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

68.    By and through Plaintiff's Affidavit attached hereto this pleading as Exhibit No. 3 the plaintiff has asserted he was fifty-four (54) years of age, of Hispanic descent and is age making plaintiff a protected class.  See, Exhibit No. 3, paragraph number 1;



1).    Plaintiff, Dr. Allen Castro suffered an adverse employment action and was retaliated against in his position with defendant. The reason for the retaliation was pretextual in nature.

2).    for Plaintiff has asserted that he was qualified for the positions he held with defendant and he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action.

3).    He was replaced by someone younger or outside the protected class, treated less favorably than a similarly situated younger employee without normal due process considerations he was not allowed to properly grieve against the Defendant's actions. A conspiracy was formed by defendant; by and through Smith-Dean, Seth McCabe, and H-R.

B.    RACE/COLOR DISCRIMINATION

69.    By and through his Complaint and attached affidavit Petitioner, Dr. Allen Castro pleads a *prima facie* case of gender discrimination and contends: To establish a *prima facie* case of race-based employment discrimination, the plaintiff must show (1) he or she is a member of a protected class; (2) he or she was qualified for the position; (3) an adverse employment action occurred; (4) the employer gave preferential treatment to a similarly situated employee who is not in the protected class under nearly identical circumstances.

1).    By and through Plaintiff's Affidavit attached hereto this pleading as Exhibit No. 3 the plaintiff has asserted, he is of Hispanic descent and is fifty-four (54) years of age making plaintiff a protected class.  See, Exhibit No. 3, paragraph number 1;



2).    Plaintiff has asserted that he was qualified for the positions he held with defendant.

3).    Plaintiff has had countless adverse employment actions and he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action, See Exhibit No. 3.

4)    Members outside of his protected class were treated more favorably even though they had less seniority were provided issued new or better equipment, more training opportunities and ultimately another member outside of the protected class received his position;

## C.    RETALIATION

70.    By and through his Petition, Dr. Allen Castro pleads a *prima facie* case of retaliation and contends (1) that he engaged in protected conduct and opposed unlawful conduct; (2) that he was illegally investigated and his duties altered; and (3) causal connection exists between his protected conduct and his termination.

1).    By and through Plaintiff's Affidavit was fifty-four (54) years of age making plaintiff a protected class.  See, Exhibit No. 3, paragraph number 1;

2).    Plaintiff has asserted that he was qualified for the positions he held with defendant.

3).    Plaintiff has had countless adverse employment action to include and he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action;

4)    Other members outside of his protected class were treated more favorably even though they had the same equipment failures were able to keep employment.



71.    Dr. Allen Castro labor disputes, to include several EEOC investigations, a conspiracy was formed by defendant; by and through H-R, Smith-Dean, and Seth McCabe. Additionally, he was a participant in an EEOC investigation by fellow Mrs. Nancy Soto and Ms. Alexandria Millan.

## Retaliation Discrimination Under Various Statutes

72.    When PLAINTIFF participated in the Kelmar Global investigation that was prompted by allegations of bullying by Smith-Dean against an older co-worker, PLAINTIFF recommended that Smith-Dean be fired and PLAINTIFF gave five bullet points justifying why. In one bullet point, PLAINTIFF stated that if she were not fired, then there would be reprisals against those who testified against her in that investigation.

73.    PLAINTIFF was right. She has admitted to pre-meditated, future Discrimination and Retaliation Discrimination based on disability. She frames her case in terms of a worldview grounded in a dangerous trope, not a dangerous person. Other individuals who participated in the Kelmar Global investigation are also being attacked.

74.    Moreover, she has poisoned her staff against PLAINTIFF. Once upon a time, PLAINTIFF was friendly with her staff. Today, her staff unmistakably treats PLAINTIFF as if PLAINTIFF is "radioactive." It has gotten increasingly difficult for PLAINTIFF to do PLAINTIFF'S job.

75.    In this matter the PLAINTIFF will show that the DEFENDANT BEXAR COUNTY has violated Chapter 21 of the Texas Labor Code in a multitude of ways by actively discriminating against PLAINTIFF on the basis of his age, his race or national origin, based on a qualified disability, or being regarded as having a disability, and on the basis of his sex, which has now



been interpreted by the U.S. Supreme Court in ***Bostock v. Clayton County, Georgia*** [2]to include PLAINTIFF'S sexual orientation.

76.     In each of the various causes of action for discrimination claimed by the PLAINTIFF was a member of the protected class intended by the statute, and suffered discrimination in various forms, including but not limited to the following:

   a.  A limitation, segregation, classification in a way that adversely affected him;

   b.  A reduction in PLAINTIFF's job responsibilities, job duties, seniority;

   c.  An alternation of PLAINTIFF'S working conditions in a manner that could be considered adverse, or undesirable when compared to the working conditions experienced or enjoyed by of other similarly situated employees who were not of the same class or did not share the same characteristics as the Plaintiff;

   d.  By the use of standards or criteria or methods of administration that have the effect of discriminating against the PLAINTIFF based upon his protected class membership or characteristics;

   e.  By excluding or otherwise denying Plaintiff the equal job assignments or job responsibilities, or job benefits that were offered to other similarly situated employees who were not member of the Plaintiff's protected class, or shared Plaintiff's protected characteristics;  OR

   f.  By using standards or criteria that would screen out, or tend to screen out, employees that shared the Plaintiff's protected class characteristics or protected class membership without a legitimate business necessity or that was motivated by or designed to perpetuate discrimination based upon age, race or national origin, sex (i.e., sexual orientation) or disability or perceived disability.

---

[2] ***Bostock v. Clayton County, Georgia,*** **(June 15, 2020) No. 17–1618, 723 Fed. Appx. 964, reversed and remanded; No. 17–1623, 883 F. 3d 100, and No. 18–107, 884 F. 3d 560, affirmed.**



74.    Each of the above-mentioned forms of discrimination was a motivating factor causing or was the but-for cause of the actual damages suffered by the PLAINTIFF.

75.    DEFENDANT has also by and through its employees acting as managers, directors, supervisors has engaged in numerous acts of **retaliation discrimination** against the PLAINTIFF.    PLAINTIFF contends that upon final trial it will demonstrate and prove a *prima facie* case of retaliation discrimination by showing:

   a.    that PLAINTIFF engaged in protected activity and/or PLAINTIFF opposed or resisted  unlawful conduct;

   b.    that his employer took an adverse employment action against the PLAINTIFF; and

   c.    a causal connection exists between his protected conduct and adverse employment action.

### DEFENDANT'S DISCRIMINATORY ACTIONS TAKEN AGAINST PLAINTIFF UNDER TITLE VII

76.    Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute and was employed by a governmental body, agency or political subdivision that is subject to the statute.

77.    DEFENDANT is an employer within the meaning of Title VII, is engaged in an industry affecting commerce, and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.  The DEFENDANT has more than five hundred employees.

78.    Smith-Dean, McCabe, Mike Lozito ("LOZITO") and Gilbert Gonzales, identified as the PLAINTIFF'S supervisors either are currently or were employed by the DEFENDANT. SMITH-DEAN        as Assistant County Manager, and the others as supervisors, directors or other specialists in the Office of Criminal Justice (OCJ) for the DEFENDANT.



79.    PLAINTIFF'S supervisors are empowered by DEFENDANT to take tangible employment actions against PLAINTIFF.  As senior supervisors, the DEFENDANT's employees exercised supervisory authority over PLAINTIFF, to include but not limited to:

a)  the authority to fire PLAINTIFF;

b) the authority to include or exclude PLAINTIFF from certain job related activities;  and 3) the authority to reassign PLAINTIFF to a location or a position with significantly different responsibilities.

80.    DEFENDANT's employees ultimately did those very things by denying the PLAINTIFF advancement, reassigning him to an office that was insulated and isolated from the rest of his department, by instituting processes to keep PLAINTIFF from participating with department activities on the separate floor, and creating a hostile work environment in an attempt to cause his resignation.

81.    DEFENDANT used the following discriminatory employment practices, policies, and rules in violation of Title VII:  Plaintiff's chain of command failed to abide not only by the DEFENDANT's own Human Resources Policy and Procedure but also dismissed other rules for hiring or employment actions.  Although these practices, policies, and rules appear to be neutral, they serve to discriminate against the Plaintiff.

82.    DEFENDANT and DEFENDANT's employees created a hostile work environment through its discriminatory words and retaliatory actions towards PLAINTIFF because of PLAINTIFF's participation in an internal investigation, his sexual orientation, his age, his education level, and his race or national origin.   This conduct was so severe and pervasive that it altered the terms and conditions of PLAINTIFF's employment and interfered with PLAINTIFF's work performance and thereby created an intimidating, hostile, and offensive work environment.

83    DEFENDANT is directly liable because it was negligent in discovering and remedying the discriminatory and unlawful conduct.  DEFENDANT intentionally discriminated against PLAINTIFF because of his sex or sexual orientation, his age,  and based upon his participation in



the Kelmar Global Investigation, in violation of Title VII by DEFENDANT.   This stigmatizing, isolation and exclusion of the PLAINTIFF was accomplished by taking away PLAINTIFF's departmental interaction with work colleagues and peers, without any corrective or disciplinary written paperwork.  PLAINTIFF opposed what he contended in good faith were discriminatory practices.   DEFENDANT's actions and omissions were discriminatory in nature and were intended to cause the PLAINTIFF to resign or be terminated rather than continue to face additional harassment and discriminatory practices.   DEFENDANT intended to make PLAINTIFF's working conditions so intolerable that no reasonable employee would accept or endure such conditions.   In fact, several other similarly situated employees, who have suffered similar job retaliation, discrimination and harassment have resigned or have been forced to quit.

84.    DEFENDANT is strictly liable for DEFENDANT's employee's discriminatory conduct because DEFENDANT and DEFENDANT's employees took a tangible employment action against PLAINTIFF that significantly changed PLAINTIFF's employment status.   This ultimately led to PLAINTIFF being reassigned with significantly different responsibilities and PLAINTIFF's benefits were significantly changed ultimately desiring PLAINTIFF to resign or be subject to termination.

85.    DEFENDANT is vicariously liable for DEFENDANT's employee's discriminatory conduct. DEFENDANT did not exercise reasonable care to prevent and promptly correct the discriminatory conduct, even though PLAINTIFF took advantage of the deficiency and authored the ***BULLYING POLICY*** portion of the employee manual for the DEFENDANT, and attempted to utilize the measures designed to prevent and correct defendants discriminatory conduct.

### *RETALIATION DISCRIMINATION*

86.    By and through the Petition, PLAINTIFF pleads a *prima facie* case of retaliation discrimination and contends  (1) that he engaged in protected activity  and/or he opposed unlawful conduct;     (2) that he suffered adverse job action including being subjected to **illegal investigation; and his duties altered or reduced in adverse manner;** and (3) there is a causal connection between his protected activity and his demotion of duties and lack of inclusion and loss of potential promotion(s).



87.     PLAINTIFF has asserted that he was qualified for the positions over substance abuse programmatic issues and the current grant writing and fund raising in the Office of Criminal Justice, showing that he was demoted from his position within the administration of DEFENDANT BEXAR COUNTY.

88.     PLAINTIFF has had countless adverse employment actions to include he was demoted from a position he was otherwise qualified for; and he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action.

89.     Other members outside of the PLAINTIFF'S protected class, as a fifty-four (54) year old Hispanic (age), gay (sex -orientation) male with a PhD, were treated more favorably, even though they had less job qualifications or seniority, other similarly situated employees were provided with substantially different requirements or supervision or discipline, thus creating more or better opportunities and ultimately another member outside of the protected class who received favorable treatment, less supervision, even though they had less educational credentials, less seniority, and less qualifications.

### *HOSTILE WORK ENVIRONMENT*

90.     DEFENDANT BEXAR COUNTY created a hostile work environment in its words and actions of a supervisor, manager or coworker which negatively or severely impacted the PLAINTIFF's work ability to complete his work. In order to establish a hostile work-environment claim, a PLAINTIFF must prove five elements: (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome harassment that was severe and pervasive; (3) the harassment was based on [the protected class]; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Id. (citing Shepherd v. Comptroller of Pub. Accounts of Tex., 168 F.3d 871, 873 (5th Cir. 1999) (footnote omitted)).



91.     Here, in this cause, PLAINTIFF is a Hispanic male and PLAINTIFF was subject to unwelcome harassment and retaliation discrimination at the hands of Smith-Dean, Lozito, McCabe, and Mr. Gilbert Gonzales.  The harassment includes his demotion in job duties, or responsibilities, his isolation, and/or his exclusion from daily job interactions and activities. The employer knew of the discriminatory action, but failed to take action.  Instead, employer, BEXAR COUNTY, hindered the due access by purposely not including PLAINTIFF in team activities, isolating him from the team by locating his office on another floor, and demeaning PLAINTIFF in how he is portrayed and addressed with respect to keeping him from the floor with his team.

92.     PLAINTIFF is an individual within several protected classes, and was retaliated against, in addition to those classes, for participation in the internal Kelmar Global Investigation, and has suffered discrimination and retaliation discrimination by demotion and changing and reducing his job duties.

### *DISABILITY DISCRIMINATION*

93.     PLAINTIFF is a qualified individual with a disability under the ADA,  the ADAAA, and under Chapter 21 of the Texas Labor Code, in that he was at one time, while employed with the DEFENDANT diagnosed with a major depressive disorder or mental illness, that is controlled or in remission with medication and therapy.   Although he was qualified individual under the applicable statutes protecting disabled employees, he was subjected to discrimination within the meaning the applicable statutes, because of his disability.

94.     Alternatively, the PLAINTIFF was regarded as having a disability by the DEFENDANT. The ADAAA fundamentally changed the "regarded as" disability standard.  Under the ADAAA, the employee will meet the test if he or she is subjected to a prohibited act because of an actual or a perceived physical or mental impairment whether or not the impairment actually limits or is perceived to limit a major life activity.  The DEFENDANT perceived the PLAINTIFF as having an impairment and discriminated against him on that basis.



95.     Under the ADA and the ADAAA, but not under chapter 21 of the Texas Labor Code, the PLAINTIFF also sues for prohibited discrimination because of his association or relationship with another individual who has a qualified disability.

96.     Under Chapter 21, of the Texas Labor Code the Defendant is also liable for aiding, abetting, inciting, or coercing a person to engage in prohibited discrimination against a disabled employee.

97.     Each of the acts of discrimination by the DEFENDANT caused PLAINTIFF to suffer actual damages for which he now brings suit.

## VII.  DAMAGES

98.     As a direct and proximate result of DEFENDANT's conduct, PLAINTIFF suffered the following injuries and damages in a sum within the jurisdictional limits of this court, including but not limited to:

a.  PLAINTIFF is derailed and blacklisted from future promotions resulting in actual damages in the form of lost wages in the past, loss of increases in future pay, lost promotions, loss of seniority, and lost benefits in the past and lost benefits in the future;

b.  The consequences of this behavior have been psychological, professional, and financial. Psychologically, the constellation of infractions against me began on or about July 2012, they were greatly exacerbated and aggravated in 2018, 2019 and in 2020, and have continued to this day. On July 5th, 2012, a reorganization of the Management and Finance Department took place and PLAINTIFF'S immediate supervisor changed from Mr. Hank Reyes who was a decent, respectful individual to McCabe who was a serial harasser, and routinely discriminated and retaliated against PLAINTIFF. Within the week, the yelling, the humiliation, and the attacks began. Almost immediately, PLAINTIFF began to see a psychologist. At its height of his mental psychological impairment due to the discrimination, harassment and retaliation PLAINTIFF had to take anti-depressants and anti-anxiety medication.



c. PLAINTIFF has also suffered compensatory damages in the form of significant cost of the behavioral healthcare which he has had to incur and will continue to incur. There is the financial loss of past and future promotions in the current workplace. There is the loss of future pension proceeds in the event that he ever has to leave the employee of DEFENDANT because PLAINTIFF'S situation becomes unbearable or untenable, in which case PLAINTIFF will suffer loss of his pension match made by BEXAR COUNTY into his retirement system pension plan.

d. PLAINTIFF seeks compensation for all damages, which include: loss of promotion; loss of seniority; loss of pension contributions commensurate with the higher salaries; loss of seniority; loss of future earning raises, including loss of Social Security or other retirement benefits from lost match contributions and benefits. Therefore, PLAINTIFF seeks an award of front pay and retirement benefits to compensate his applicable: up to the mandatory retirement age of sixty-five (65) years old;

e. PLAINTIFF has suffered mental anguish and emotional distress for which he sues.

f. Reasonable attorney's fees, costs, and expenses of this action, including expert witness costs;

g Pre-judgment and post-judgment interest at the highest rates allowed by law;

h. PLAINTIFF seeks damages in an amount that is within jurisdictional limits of court; and

i. Such other and further relief, at law or in equity, as this Honorable Court may find proper.

## VIII.  ATTORNEY FEES AND COSTS

99.    PLAINTIFF is entitled to an award of attorney fees, costs and expert fees;.

## IX.    PRAYER

100.    For these reasons, PLAINTIFF asks for judgment against DEFENDANT for the following:



a.  affirmative action to hire, reinstate, or promote PLAINTIFF;

b.  back pay;

c.  front pay;

d.  compensatory damages;

e.  Punitive damages;

f.  prejudgment interest on lost wages and benefits and post judgment interest on all sums, including attorney fees;

g.  for reasonable attorney fees;

h.  Costs of suit;

i.  All other relief the Court deems appropriate.

Respectfully submitted,

*Law Offices of :*
THE JAKOB LAW FIRM, P.C.
TETCO CENTER
1100 N E Loop 410, Suite 200
San Antonio, Texas 78209
Tel.:  (210) 226-4500
Fax:  (210) 226-4502
Email:  service@thejakoblaw.com

By:_____

**JASON J. JAKOB**
State Bar No.: 24042933
Email: jjakob@thejakoblaw.com
Attorney for PLAINTIFF, ALLEN
CASTRO, Ph.D.

PLAINTIFF REQUESTS TRIAL BY JURY



# EXHIBIT NO. 1

The Jakob Law Firm, P.C.





# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**San Antonio Field Office**
5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229
(210) 640-7530
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 10/05/2022

**To:** Dr. Allen Castro
2342 W. Huisache Ave
San Antonio, TX 78201
Charge No: 451-2022-03463

EEOC Representative and email:     Carla Torres-Solis
Federal Investigator
carla.torres-solis@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 451-2022-03463.

On behalf of the Commission,

Norma J Guzman
Field Director

**Cc:**
Pamela Bell
Bexar County
101 W NUEVA 7th Floor
SAN ANTONIO, TX 78205

Jason J Jakob
The Jakob Law Firm, P.C.
1100 NE Loop 410, Suite 200 The TETCO Center
San Antonio, TX 78209


Please retain this notice for your records.

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to:
https://www.eeoc.gov/eeoc/foia/index.cfm.

# EXHIBIT NO. 2

The Jakob Law Firm, P.C.



EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☑ EEOC | |

| TEXAS WORKFORCE COMMISSION | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| DR. ALLEN CASTRO | (210) 325-778⁵ | 1968 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2342 W. HUISACHE AVE., SAN ANTONIO, TX 78201 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| BEXAR COUNTY | 501+ | (210) 335-2405 |

| Street Address | City, State and ZIP Code |
|---|---|
| 101 W. NUEVA, SAN ANTONIO, TX 78205 | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es))

☑ RACE  ☐ COLOR  ☑ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☑ RETALIATION  ☑ AGE  ☑ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 07-15-2022    Latest 08-31-2022
☑ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please see attached Sworn Affidavit and Complaint of Dr. Allen Castro.

I believe that I have been discriminated against because of my race (Hispanic), and sex (sexual orientation) and retaliated against for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe that I have been discriminated against based on my age (54), in violation of the Age Discrimination in Employment Act of 1967, as amended. I believe that I have been discriminated against, in violation of the Americans with Disabilities Act of 1990, as amended. I believe I have been retaliated against in violation of the aforementioned statutes.

Sign _____    Date  9/21/22

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | |
| 8/29/22 Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 8/29/22 |

JANA LITTLE
Notary Public, State of Texas
Comm. Expires 06-18-202[?]
Notary ID 133[?]15[?]00

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# EXHIBIT NO. 3

The Jakob Law Firm, P.C.



THE STATE OF TEXAS          §
COUNTY OF BEXAR            §

### SWORN AFFIDAVIT AND COMPLAINT OF ALLEN CASTRO, Ph.D.

Before me the undersigned notary, on this day personally appeared **Allen Castro**, a person whose identity is known to me. After I administered an oath to him, upon his oath he said:

1).    "My name is Allen Castro. I am over 21 years of age and legally competent. I do hereby swear that the following facts are true to the best of my knowledge and are within my personal knowledge;

2).    I, Dr. Allen Castro, have worked for Bexar County since March 25, 2003. The time frame for the alleged EEOC charge(s) dates from July 5, 2012, to the present day which demonstrates an active and continual pattern of discriminatory acts by my employer against me;

3)    I have been systematically experiencing harassment and discrimination in the workplace due to my sexual orientation and/or to file charges of sex discrimination under Title VII of the Civil Rights Act. V. I have been harassed by both Mr. Seth McCabe and Mrs. Smith-Dean due to my sexual orientation. Mr. Seth McCabe would constantly harass me and make gay jokes in presence of coworkers in an attempt to demean me creating a hostile work environment. When I would elevate it to Bexar County Management it became evident that the discrimination would continue and nothing of substance would be done to negate the bullying and harassment. Mrs. Tina Dean-Smith herself would refer to gay women such as Ms. ████████████, the only other LGBT employee in the Budget and Finance Department as "rug-munchers." She made lude comments about homosexuals knowing of my sexual orientation (i.e. "rusty trombone") . This pattern of abuse led me to have extreme anxiety and at one point suicidal ideations against myself from systematic "gay bashing" at the highest levels of Bexar County Budget Department. This systematic harassment continues to this very day.

initials

4).    I continue to be retaliated against because I was a witness and participant in two EEOC investigations made by coworkers, Mrs. ████████████ and Ms. ████████████ On Friday, July 15, 2022, the Business Services Manager for the Department stated that Mr. ████████ was no longer employed at the County (email dated Friday July 22, 2022; 4:15 pm). This was the individual who received an office in the Department's suite of offices on the 9th floor. By Monday, August 8, 2022, I had already noticed that Ms. ████████, the Peer Mediation Coordinator, had taken his office. I was not offered an office with my coworkers and am isolated in a totally different building two blocks away from the Department. Again, an individual who is younger, less educated, less tenured, and with a lower pay grade took a vacated office. This is

now a pattern consistent with the marginalization and ostracism that I have experienced as a direct result to a subsequent Federal lawsuit.

5).    The Impact of Not Being Housed with My Department:

a).    The Honorable Marialyn Barnard, Bexar County Commissioner for Precinct Three, conducted a visit of the Department upon being appointed to her position by the Bexar County Judge, The Honorable Nelson W. Wolff, the. Various staff benefited from "face time" with an elected official while I was excluded from this opportunity. It should be noted that I have a track record of showing up to work all five days a week even though Department staff is only required to show up to the office three days a week. Thus, there is no question that I would have been able to visit with her.

b).    On Thursday, August 25, 202,2 at 1:39 pm, I received an email from the Chief of Staff to the Honorable Nelson Wolff stating that a check for the Hidalgo Foundation of Bexar County had arrived in the mail. She stated that she would be working from home on Friday, August 27, 2022. I stated that I had just been in the Hidalgo Office down the hall from her on the 10th floor of the Paul Elizondo Tower and that we must have missed each other. I further stated that I was back in my County office two blocks away. It was raining outside and I asked her if I could pick up the check on Monday. She said yes. Had I been co-located with my Department on the 9th floor of the Paul Elizondo Tower, I could have easily walked upstairs to pick up the check.

c).    On Friday July 15, 2022, the Business Services Manager for the Department stated that Mr. ▇▇▇▇▇▇▇ was no longer employed at the County (email dated Friday July 22, 2022; 4:15 pm). This was the individual. Who received an office in the Department's suite of offices on the 9th floor. By Monday, August 8, 2022, I had already noticed that Ms. ▇▇▇▇▇▇▇ the Peer Mediation Coordinator, had taken his office. I was not offered an office with my coworkers and am isolated in a totally different building two blocks away from the Department. Again, an individual who is younger, less educated, less tenured, and with a lower pay grade took a vacated office. This is now a pattern consistent with the marginalization and ostracism that I have experienced as a direct result to a subsequent Federal lawsuit. Moreover, this pattern is consistent with the ways I was treated in the past, for example:

$A^C$
initials

6).    I had received a visit from the Bexar County Ombudsman and Dr. Norma Greenfield-Laborde regarding an alleged incident in which a racist comment was made to the Business Services Manager, Bea Marroquin. Importantly, Ms. Marroquin is attempting to retaliate against and defame me by "poisoning" my relationships with co-workers stating that I. "I am suing ▇▇▇▇▇ ▇▇▇▇▇" and 2. "I am tape recording conversations in the workplace," which have been told by multiple coworkers. An HR employee stated that ▇▇▇▇▇▇▇▇▇▇, the Assistant County Manager, personally visited the HR department making me subject of the matter. I had a previous lawsuit that is public records and has been posted publicly accessible to all County employees. I have never tape recorded a single conversation in the workplace. Regardless of the allegations by the Business Services Manager, it appears as if there is an orchestrated effort to build a case against

me. Currently the HR Director has the stated that the Ombudsman was hired by the County "to stop this nonsense"- a reference to multiple EEOC complaints against the party.

7).    When Mrs. Tina Smith-Dean was promoted to Assistant County Manager and Mr. Seth McCabe became her direct report and my immediate supervisor. All three individuals were housed on the 9th floor of the Paul Elizondo Tower (PET) with offices in very close proximity to each other. This formal chain-of-command structure as well as office location existed until the first week of October 2018 at which time, I accepted the newly created position of Substance Abuse Program Manager within the Department of Behavioral Health Services (DBHS).    This Department was housed within the larger Office of Criminal Justice (OCJ) on the 3rd floor of the PET.   This position was created by Mrs. Smith-Dean in response to an increasingly hostile relationship between her direct report, Mr. Seth McCabe, and I, who made a gay joke about me and created a hostile work environment.

a).    On this day June 9, 2020, I was apprised by the Director of OCJ that I no longer reported to the Director of DBHS effective immediately. This new reporting structure was framed in terms of aligning my principal job duties with my chain-of-command. The Director of DBHS framed the move as a promotion because I now reported to the same person as the DBHS Director himself.

b)    Later that summer, the entire OCJ was notified that it would be moving to a suite of offices on the 9th floor of the PET. The one exception would be the DBHS of which I was no longer a part. I was notified that I would be the one single non-DBHS staff person of the OCJ who would remain on the 3rd floor. I made my concerns known by email and verbally to both the Director of the OCJ and the Director of DBHS. My concerns centered on 1) the detrimental impact to the quality and quantity of my work; and, 2) the stigma associated with being the only OCJ staff person not moving. Leadership stated that because it was the most recent addition to the OCJ, there was no room for me in the suite of offices on the 9th floor. This rationale was actionably refuted within two months by Mr. ▮▮▮▮.

c).    I believe that the true purpose of not being moved to the 9th floor is retaliation by Mrs. Tina Smith-Dean against me. This retaliation is intentional, willful, and knowingly malicious. It is also characteristic of a larger pattern of retaliation by Mrs. Tina Smith-Dean that has been directed not just at me but at other current and former employees with EEOC cases pending against her.



initials

d).    Specifically, I has been referenced by name as a witness in the pending EEOC cases of Mrs. ▮▮▮▮▮▮▮▮ and Ms. ▮▮▮▮▮▮. I also participated in nearly four hours of testimony and provided comprehensive backup documentation in Bexar County's internal investigation into the complaints that Mrs. ▮▮ lodged against Mrs. Smith-Dean (the "Kelmar Global Investigation").

8).    The Bexar County Criminal District Attorney's Office (D.A.'s Office) concluded that no criminal malfeasance took place; however, I would argue that the D.A.'s Office has a conflict of interest between its role as criminal prosecutor and its role as civil attorney for the County. The D.A.'s Office – in collaboration with the County Manager's Office – has cultivated a "cover up culture" in which victims are silenced and those with corroborating information and similar experience are diminished, discounted, and discarded. The conclusions reached by the D.A.'s Office and accepted by the County Manager's Office are self-serving and short-sighted. In fact, participation in that investigation caused nothing but retaliation against those who came forward with EEOC and non-EEOC complaints.

9).    The pattern of retaliation speaks for itself. I was not being with my colleagues to the 9th floor for the same reason Ms. ████ had been moved away from the 9th floor and for the same reason why Mrs. ████████ was escorted from the 9th floor and ultimately discharged from the County. Their behavior is protected by Federal law but not protected by the Assistant County Manager. Therefore, I – like Ms. ████ and Mrs. ███ – am being ostracized, marginalized, and stigmatized.

10).    It is also worth noting that despite being told that there was no room on the 9th floor for me, a younger Office Assistant in OCJ was promoted in October 2020 to OCJ Coordinator and moved from a cubicle into an empty office that had been empty since the entire OCJ moved. I have also observed the consistent messaging from my coworkers that I am not to be seen on the 9th floor. Quotes such as I was "sighted" and I "was not supposed to be up there" are difficult to reconcile with the fact that my immediate supervisor, coworkers, and colleagues are all "up there."

11).    Finally, it should be noted that while I made the original allegation of age discrimination against Mr. Seth McCabe and that his immediate supervisor, Mrs. Tina Smith-Dean, attempted to rectify the situation; I never benefited from the solution proposed by Mrs. Smith-Dean (a "team building" exercise). In fact, I was the one single person who did not benefit from a team building exercise even though it was my allegation that prompted the restorative intervention for the other older employees in the first place.

H͟C͟
initials

12).    It should also be noted that I was made aware this past summer of some photos of a mandatory 9th floor holiday party at the Cadillac Bar in which my co-workers and immediate supervisor(s) at the time (Mr. Seth McCabe and Mrs. Tina Smith-Dean) were engaged in "gay bashing" behaviors; interacting with blow up sex dolls; and, posing with "willie warmers" and "midget condoms." As a member of the LGBTQ community and as someone with fifteen years of sobriety (November 21, 2006); I did not and would not have attended an office function of that nature. This incident suggests that if this kind of behavior is going on behind my back; then retaliation may not be the only motive for the behavior of Mrs. Tina Smith-Dean and that her targeting of me is and always has been a function of animus related to an EEOC protected status long before I ever assisted Mrs. ████ and Mrs. ████.

Mrs. Smith-Dean remains in her position as Assistant County Manager and has the authority over the Human Resources Department, the Budget Office, grants, and management and finance. She also has the authority and has used her influence over my current immediate supervisor to make my work situation untenable. The reasons offered for not moving me with my colleagues and coworkers on the 9th floor are not credible.

11.    I believe that Bexar County and Mrs. Smith-Dean are retaliating against me based on my participation in a protected activity in violation of Title VII of the Civil Rights Act of 1967, as amended. This behavior has continued in workplace harassment and retaliation from past to present and has had enough. Moreover, I believe that I am being discriminated against based on several protected classes: age, sex, discrimination, and disability.

12.    It is my belief that Bexar County by and through its agents have violated the Americans with Disabilities Act (ADA) and information protected under the Healthcare Insurance Portability and Accountability Act (HIPPA)

a).    There are only two ways in which Mrs. Smith-Dean could have known that I had a "mental health crisis" and was contemplating bringing a gun into the workplace to commit suicide (not homicide). The first is by reading the Kelmar Global investigation report along with the contributory materials (i.e. transcripts, audio recordings of interviews, etc.). She has already divulged that she was privy to the Kelmar Global investigation report in a deposition for an existing EEOC claim against her. Therefore, I should be privy to the same access to that report.

b).    The second way that Mrs. Smith-Dean could have found out that I was hospitalized for a mental health crisis was because my immediate supervisor at the time (Mr. Gilbert Gonzales) and his immediate supervisor at the time – and my current immediate supervisor – Mr. Mike Lozito told her. If that is the case, then they disclosed healthcare-related information to a third party that was ultimately weaponized against me.

Further affiant sayeth not".

Executed this 29 day of August, 2022

Dr. Allen Castro

State of Texas

County of Bexar

Allen Castro Sworn Statement

On this this __29__ day of __August__, 2022 after being duly sworn by the undersigned authority, Dr. Allen Castro, personally appeared before me and upon his oath executed this affidavit.



_____

Signature
Printed Name of Notary Public

```
JANA LITTLE
Notary Public, State of Texas
Comm. Expires 06-18-2026
Notary ID 133815200
```

initials